# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-20765-JLK

EDUARDO CHAVEZ-FUENTES,

      Plaintiff,

v.

ANDREW SAUL,[1]
Commissioner of Social Security Administration,

      Defendant.

_____/

## SUPPLEMENTAL[2] REPORT AND RECOMMENDATION[3]
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

      This matter is before the Court on the parties' cross motions for summary judgment.

Plaintiff Eduardo Chavez-Fuentes ("Plaintiff" or "Chavez-Fuentes") filed his Motion for Summary

Judgment on August 13, 2018.   ECF No. [13].   Defendant Andrew Saul ("Defendant" or

---

[1] Andrew Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] On January 27, 2020, the undersigned submitted a Report and Recommendation on this matter. ECF No. [19].  Plaintiff filed his Objections, ECF No. [20], and the Commissioner Responded, ECF No. [21].  On April 13, 2020, the Court issued its Order on the Objections which rejected the Report and Recommendation given that the undersigned had not considered the impact of *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), and referred the matter to the undersigned for a supplemental report and recommendation addressing the impact of *Washington*. As such, this Supplement Report and Recommendation: (1) replaces Section III.C. such that the analysis in that section now considers the impact of *Washington*; (2) recommends that the case be remanded on that issue; and (3) limits the time for the filing of further objections.  The remainder of the Supplemental Report and Recommendation is the same as the Report and Recommendation filed on January 27, 2020.

[3] On February 28, 2018, this matter was referred to Chief Magistrate Judge Andrea M. Simonton for "a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters."  ECF No. [2].  On January 5, 2019, this matter was reassigned to the undersigned pursuant Administrative Order(s) 2019-3.  ECF No. [18].

"Commissioner") filed his Motion on September 12, 2018.  ECF No. [14].  Plaintiff filed his Reply in Opposition on November 13, 2018. ECF No. [17].  The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a review of the parties' motions, the record, the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. [13], be **GRANTED IN PART AND DENIED IN PART**, that Defendant's Motion for Summary Judgment, ECF No. [14], be **DENIED**, and that the ALJ's Opinion be **REMANDED**.

## I.     BACKGROUND

Plaintiff was forty-three (43) years old when the ALJ rendered his decision.  R. at 9, 158.[4] Plaintiff has a sixth-grade education and past work as a carpenter.  *Id*. at 40, 189.  On September 26, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning January 23, 2013 due to spine, back, neck, and left arm/hand conditions. *Id*. at 158–162, 188.  On October 24, 2014, the Social Security Administration ("SSA") initially denied Plaintiff's application for disability.  *Id*. at 112–14.  Plaintiff appealed the SSA's decision, and on January 21, 2015, the SSA again denied Plaintiff's application for disability.  *Id*. at 80–84.  On January 27, 2015, Plaintiff requested a hearing before an ALJ.  *Id*. at 86–87.  The hearing took place on April 26, 2017.  *Id*. at 37.  Thereafter, on May 12, 2017, the ALJ issued a decision denying Chavez-Fuentes' claim for disability. *Id*. at 15–28.  On January 2, 2018, the Appeals Council denied Chavez-Fuentes' request for review.  *Id*. at 1–5.  On February 28, 2018, Chavez-Fuentes filed the instant action seeking judicial review.  ECF No. [1].

---

[4] References herein to "R. at __" are to the Social Security record, the pertinent parts of which can be found at ECF No. [8].

## A.  The Hearing Before The ALJ

On April 26, 2017, Chavez-Fuentes testified before ALJ Daniel E. Whitney that he was unable to work due to functional difficulties and pain in the left side of his body.  R. at 43–44. Chavez-Fuentes testified that he has difficulty turning his neck to the left, using his left arm and hand, and using his left leg.  *Id.*  Chavez-Fuentes alleged that his condition is attributable to an auto accident in January 23, 2013.  *Id*. at 48.  Chavez-Fuentes stated that his level of pain, on a scale from one to ten, is an eight.  *Id*. at 48.  Chavez-Fuentes also testified that medication helps with the pain, but that the medication makes him very sleepy.  *Id*. at 47.  He stated that he cannot hold another job because the medication makes him very sleepy.  *Id*. at 50–51.

A vocational expert ("VE") also testified at the hearing.  *Id*. at 51.  The ALJ asked the VE to consider a hypothetical claimant with the same age, education, and work history as Chavez-Fuentes.  *Id*.  The ALJ then asked the VE to assume this hypothetical claimant is limited to sitting six hours, standing and walking six hours, lifting twenty pounds occasionally[5] with the right arm, and ten pounds frequently with the left arm.  *Id*.  Finally, the ALJ asked the VE to assume that this claimant is able to engage in frequent climbing, balancing, and stooping; is able to engage in frequent reaching and handling using the left upper extremity; and must avoid concentrations of vibrations, hazardous machinery and unprotected heights.  *Id*. at 52.  Upon considering the ALJ's hypotheticals, the VE testified that such a claimant would not be able to work as a carpenter.  *Id*. However, the VE testified that such a claimant would be able to perform other work in the national economy, including work as a "counter clerk," a "school bus monitor," and an "usher."  *Id*. at 53. The ALJ then asked the VE whether such a claimant would still be able to perform work in the

---

[5]"Occasionally" means the activity or condition exists from very little up to one-third of the time. *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, at Appendix C-3 (U.S. Department of Labor, Employment and Training Administration 1193).

national economy if he were limited to: occasional climbing; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and occasional reaching and handling using the left upper extremity. *Id*. The VE answered in the affirmative, stating that the claimant would still be able to works as a "counter clerk," "school bus monitor," or an "usher." *Id*.

Plaintiff's counsel then cross-examined the VE and asked whether a hypothetical claimant could perform any work in the national economy if he were limited to: sitting for a total of one hour in an eight-hour day; standing and walking for a total of one hour in an eight-hour day; lifting five pounds occasionally; and resting without restriction. *Id*. at 54. The VE answered in the negative, stating that such a claimant would be unemployable. *Id*.

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is currently

unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[6] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets or medically equals a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work given his Residual Functional Capacity ("RFC");[7] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Frame,* 596 F. App'x at 910. "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### C. The ALJ's Decision

On May 10, 2017, the ALJ issued his decision, finding that Chavez-Fuentes did not qualify for disability insurance benefits because he was not disabled within the meaning of the Social Security Act. R. at 15. In reaching his decision, the ALJ applied the sequential evaluation process that must be used when considering claims for disability. *See* 20 C.F.R. § 404.1520.

---

[6] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(e)(ii), (5)(c).

[7] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a).

At step one, the ALJ determined that Chavez-Fuentes had not engaged in substantial gainful activity since his alleged disability onset date, January 23, 2013. R. at 17. At step two, the ALJ determined that Chavez-Fuentes suffered from "the following severe impairments: cervical spine disorder status post cervical discectomy, decompression, and artificial disc implantation at the C5-C6 level (20CFR 404.1520(c))." *Id*. At step three, the ALJ considered the multiple listing requirements and determined that Chavez-Fuentes did not meet any of the relevant listings, including but not limited to listing 1.04 (disorders of the spine). *Id*.

Before proceeding to step four, the ALJ must determine Chavez-Fuentes' RFC, taking into consideration all his impairments, including impairments that are non-severe. *See* 20 CFR 404.1520(e). After considering the medical record in conjunction with Chavez-Fuentes' subjective allegations, the ALJ found that Chavez-Fuentes has a residual functional capacity to perform a limited range of light work as defined in 20 C.F.R. 404.1567(b).[8] R. at 18. Specifically, the ALJ considered Chavez-Fuentes' subjective symptoms and objective medical evidence in determining Chavez-Fuentes' appropriate RFC. *Id*. With respect to Chavez-Fuentes' subjective symptoms, the ALJ noted that, although Chavez-Fuentes' medically determinable impairments could reasonably be expected to cause his alleged symptoms, Chavez-Fuentes' subjective statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not consistent with the medical evidence. *Id*. In fact, the ALJ noted that his physical examination results were normal; his hand specialist discharged Chavez-Fuentes from treatment and instructed him to resume his normal activities; his orthopedic consultation ended with no recommended follow-up treatment; and Chavez-Fuentes' follow-up records showed he reported significant

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R § 404.1567(b).

improvement in his symptoms after surgery. *Id*. at 20–21. Overall, the ALJ determined that Chavez-Fuentes' alleged limitations were not fully supported by the medical record. *Id*. at 22. Nevertheless, the ALJ still restricted Chavez-Fuentes to a limited range of light work based on the surgical history and ongoing treatment for pain symptoms. *Id*. At step four, upon assessing Chavez-Fuentes' RFC, the VE testified that Chavez-Fuentes was unable to perform his past relevant work as a carpenter. *Id*. at 52. The ALJ considered the VE's testimony and similarly determined that Chavez-Fuentes could not perform his past relevant work as a carpenter. *Id*. at 23.

At step five, the ALJ acknowledged that Chavez-Fuentes' ability to perform the full range of light work was impeded by his additional limitations. *Id.* at 24. Nevertheless, based on the testimony of the VE, the ALJ determined that Chavez-Fuentes was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. *Id.* Specifically, the ALJ concluded that although Chavez-Fuentes could not perform his past relevant work as a carpenter, he could perform other work that existed in significant numbers within the national economy, including working as a "counter clerk," a "school bus monitor," or an "usher." *Id*. Based on the forgoing, the ALJ decided that Chavez-Fuentes was not disabled during the period from January 23, 2013 through the May 10, 2017, and rejected his claim for supplemental security income. *Id.* at 24–25.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See Ellison*, 355 F.3d at 1275.  In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.  *Id.*  However, no presumption of validity attaches to the ALJ's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.    ANALYSIS

Chavez-Fuentes contends that the ALJ committed four errors.  Specifically, Chavez-Fuentes contends that the ALJ erred in: (1) not according controlling weight to the opinion of Plaintiff's treating physician, Dr. Marta Rosa Fernandez ("Dr. Fernandez"); (2) discrediting Plaintiff's subjective complaints as not supported by substantial evidence; (3) failing to ask the VE whether her testimony conflicted with the Dictionary of Occupational Titles ("DOT"); and (4) not awarding Plaintiff a closed period of disability.  ECF No. [13] at 1.

The Commissioner argues that the ALJ properly determined that Plaintiff was not disabled within the meaning of the Social Security Act. ECF No. [14] at 1. Specifically, the Commissioner contends that: (1) the ALJ properly accorded limited weight to Dr. Fernandez's opinions, *id*. at 16; (2) the ALJ's decision to discredit Plaintiff's subjective complaints was supported by substantial evidence in the record, *id*. at 14; (3) the ALJ properly questioned the VE to elicit any inconsistencies between the VE's testimony and the Dictionary of Occupational Titles, *id*. at 18; and (4) the ALJ was not required to consider Plaintiff's eligibility for a closed period of disability, *id*. at 11. The Court will consider each argument in turn.

### A. The ALJ Properly Assessed The Medical Opinion Evidence.

Plaintiff contends that the ALJ erred in not according Dr. Fernandez's opinion controlling weight. ECF No. [13] at 16. Specifically, Plaintiff contends that Dr. Fernandez's opinion was due controlling weight because Dr. Fernandez was Plaintiff's treating physician and her opinion was not inconsistent with the other evidence in the record. *Id.* Commissioner argues that the ALJ properly considered Dr. Fernandez's opinion and properly decided to discount her opinion because it was inconsistent with her own treatment records. ECF No. [14] at 17.

The Eleventh Circuit has held that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when a physician's opinion is (1) conclusory, (2) contrary to or unsupported by the record evidence, or (3) inconsistent with the physician's own medical records. *See Carroll v. Comm'r, Soc. Sec. Admin.,* 453 F. App'x 889, 893 (11th Cir. 2011). Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain.

*Freeman*, 220 F. App'x at 960.  When an ALJ articulates specific reasons for declining to accord the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error.  *Carroll*, 453 F. App'x at 893 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Indeed, a court "will not second guess the ALJ about the weight [a] treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter*, 808 F.3d at 823.

The ALJ properly exercised his discretion to assign limited weight to Dr. Fernandez's opinion in determining Chavez-Fuentes' RFC.  R. at 22.  The ALJ considered Dr. Fernandez's Physical Capacities Evaluation, which concluded that Chavez-Fuentes: (1) could sit, stand, or walk less than an hour in an eight-hour work day; (2) could only occasionally lift and carry up to five pounds because of body pain; (3) could never use his left hand for any type of repetitive action, even including simple grasping motions; and (4) could not regularly use his left foot for repetitive movements such as pushing and pulling on any type of leg controls.  *Id*. at 539–41.  However, the ALJ found that Dr. Fernandez's opinion was unsupported by her own clinical findings and the objective medical evidence in the record.  *Id.* at 22.

Specifically, although Dr. Fernandez's treatment notes indicated that Chavez-Fuentes could sit, stand, or walk less than an hour in an eight-hour work day due to spinal impairment, *id*. at 539, the Homestead Diagnostic Center records showed a normal lumbar spine x-ray with no compression fracture or subluxation, *id*. at 22, 549.  Further, Dr. Fernandez's treatment notes also indicated that Chavez-Fuentes could never use his left hand for any type of repetitive action, even including simple grasping motions.  *Id*. at 540.  However, Chavez-Fuentes did not complain of cervical spine or left wrist pain, and he denied he experienced any related symptoms such as muscle weakness, extremity swelling, or intolerance to exercise.  *Id*. at 21–22, 544, 547.

Moreover, although physical examinations showed lumbar spine tenderness, Chavez-Fuentes' overall lumbar spine examinations were unremarkable.  *Id.* at 22, 544, 547.  Finally, while Dr. Fernandez's treatment notes indicated that Chavez-Fuentes' extreme limitations resulted from pain, Dr. Fernandez only prescribed Ibuprofen for that pain.  *Id.* at 545.

Given the ALJ's review of the medical evidence, the ALJ had good cause for not giving Dr. Fernandez's opinion controlling weight.  The inconsistencies between Dr. Fernandez's opinion and the essentially normal physical examinations, the minimal relevant complaints, and the conservative treatment documented in her treatment notes provide substantial evidence supporting the ALJ's decision.  *Id.* at 22.  Accordingly, because the ALJ articulated specific reasons for giving limited weight to Dr. Fernandez's opinion, and the ALJ's reasons were supported by substantial evidence in the record, the ALJ decision with respect to Chavez-Fuentes' RFC was proper.  *See Carroll*, 453 F. App'x at 893.

**B.      The ALJ's Decision To Discredit Plaintiff's Subjective Complaints Was Supported By Substantial Evidence.**

Plaintiff contends that the ALJ failed to articulate adequate reasons for discrediting Plaintiff's subjective complaints.  ECF No. [13] at 12.  As such, Plaintiff asserts that the ALJ's credibility finding with respect to Plaintiff's subjective complaints are not supported by substantial evidence.  *Id.*  Commissioner contends that the ALJ's decision to discredit Plaintiff's allegations was supported by substantial evidence.  ECF No. [14] at 14.

The Eleventh Circuit "has established a three-part pain test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically, the Eleventh Circuit's standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If a claimant established the existence of an underlying medical condition and that condition could reasonably be expected to produce the alleged symptoms, but the objective medical evidence does not confirm the severity of those symptoms, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work.  *See Kunce v. Berryhill*, No. 16-23972-CIV, 2017 U.S. Dist. LEXIS 138821, at *45 (S.D. Fla. Aug. 24, 2017); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c), (d).

Additionally, in considering the intensity, persistence, and limiting effects of the alleged pain, the ALJ considers whether there are any inconsistencies between the plaintiff's statements, the medical record, and other evidence of record.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also* SSR 16-3p.  "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1562) (internal quotations omitted).  "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole."  *Dyer*, 395 F.3d at 1210–11 (internal quotations omitted) (citing *Foote*, 67 F.3d at 1561).

Here, the ALJ found that Chavez-Fuentes met the first prong of the three-part standard because his "medically determinable impairments could reasonably be expected to cause his

alleged symptoms." R. at 19.  However, the ALJ determined that Chavez-Fuentes did not meet the second or third prongs of the standard, specifically, that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id.*

First, in making his determination the ALJ considered Chavez-Fuentes' subjective feelings of improvement with treatment before surgery.  *Id.* at 19–20.  Specifically, the ALJ noted that on March 2013, Chavez-Fuentes reported that his left wrist, neck, and middle back were all improving.  *Id.* at 20, 369.  Similarly, on April 2013, Chavez-Fuentes had a left wrist injection and was told to wear a cast for three weeks.  *Id.* at 20, 285.  After three weeks, Chavez-Fuentes reported that he was feeling much better.  *Id.* at 421.  In fact, on September 2013, Chavez-Fuentes stated that his shoulder and midback problems had resolved.  *Id.* at 303.  Second, the ALJ considered Chavez-Fuentes' subjective feelings of improvement with treatment after surgery.  *Id.* at 21–22.  Specifically, on March 2014, Chavez-Fuentes stated he was doing moderately well and noticed a fifty to sixty percent improvement in his symptoms.  *Id.* at 21–22, 458.  On April 2014, Chavez-Fuentes indicated that his neck was now feeling moderately well.   *Id.* at 21–22,  468.  Approximately three months later, Chavez-Fuentes even stated that he felt an overall improvement in his symptoms and he was pleased with the results of the surgery. *Id.* at 21.  Finally, the ALJ considered the objective evidence in the record.  *Id.*  Specifically, the ALJ considered: (1) the extensive gap in treatment after November 2014 because Chavez-Fuentes did not receive any treatment until June 2015, *id.*; (2) the minimal abnormalities that Chavez-Fuentes' physical examination and diagnostic testing revealed, *id.* at 20–23; and (3) Dr. Fernandez's use of nothing more than ibuprofen to treat Chavez-Fuentes' pain symptoms, *id.* at 22, 543.

Given the specifically articulated and numerous reasons for discounting Chavez-Fuentes' subjective allegations, the ALJ did not err in making his credibility determination of Chavez-Fuentes' testimony.  Furthermore, the ALJ properly discredited Plaintiff's subjective complaints regarding the intensity, persistence, and effect of Chavez-Fuentes' symptoms.  Specifically, the ALJ noted various inconsistencies between evidence in the record and Plaintiff's subjective complaints of pain.  Indeed, Chavez-Fuentes' alleged level of pain is inconsistent with his (1) relatively normal physical examinations, *id*. at 20–23; (2) multiple statements of improvement, *id*. at 21–22, 468; and (3) extensive gap in treatment, *id.* at 21.  Accordingly, when finding that Chavez-Fuentes' statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered the medical evidence and Chavez-Fuentes' subjective testimony.  In short, the ALJ's findings were supported by substantial evidence in the record.

### C.    The ALJ Failed To Resolve An Apparent Conflict Between the DOT and the VE's Testimony.

Plaintiff argues the ALJ failed to ask the VE whether his testimony conflicted with the Dictionary of Occupational Titles ("DOT") as required by SSR 00-4P and *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353 (11th Cir. 2018).  ECF No. [20] at 1–5.  Specifically, Plaintiff argues that during the administrative hearing the VE testified that a hypothetical person, similar to Plaintiff, who could lift twenty pounds occasionally and ten pounds frequently with his right hand but only lift ten pounds occasionally and ten pounds frequently with his left hand could still perform three jobs that were all classified as light work in the DOT.  *Id.* at 4; R. at 54–55.  Because light work requires lifting twenty pounds occasionally, and Plaintiff could not do that with his left hand, Plaintiff argues that there was an apparent conflict with the DOT's definition of light work

and the VE's testimony that the ALJ did not identify or resolve.  ECF No. [20] at 4.  That failure, Plaintiff argues, requires remand so that the ALJ can address and resolve the apparent conflict.  *Id.*

Defendant counters that the ALJ satisfied the requirements of SSR 00-4p.  ECF No. [21] at 2–5.  Defendant argues that there was no apparent conflict that the ALJ was required to identify and resolve because neither the DOT's definition of light work nor the DOT's descriptions for the jobs at issue specify that a person must be able to occasionally lift up to twenty pounds with each hand separately.  *Id.* at 3–4.  The Commissioner also relies on *Christmas v. Comm'r or Soc. Sec.*, 791 Fed. Appx. 854, 857 (11th Cir. 2019), in contending that because the DOT is silent on whether both hands are necessary, there is no apparent conflict. ECF No. [25].

In *Washington*, 906 F.3d at 1356, the Eleventh Circuit addressed "the ALJ's duty to investigate and develop an adequate factual record to support a disability determination in cases where expert testimony offered by a Vocational Expert (VE) is contradicted by an authoritative Department of Labor (DOL) publication—the Dictionary of Occupational Titles (DOT)—that the SSA frequently relies on."  In reaching its decision, the Eleventh Circuit examined Social Security Ruling 00-4p, which sets out what an ALJ must do to resolve conflicts between the DOT and expert evidence and concluded that an ALJ must do more than simply ask the VE if his or her testimony is consistent with the DOT.  *Id.* [9]  Instead, an ALJ has an "affirmative duty to identify

---

[9] In the initial briefing, the parties disputed, and the Court considered, whether it was sufficient for the ALJ to ask the VE, at the beginning of her testimony, whether there were any inconsistencies with her testimony and the DOT.  That question, whether asked either at the beginning or end of the testimony, is no longer at issue given the holding in *Washington*.  Specifically, the ALJ's obligation to resolve conflicts is an affirmative duty that is not, in the face of an apparent conflict, discharged solely by posing that question to the VE.  As such, the undersigned considers the issue of whether there was conflict in the VE's testimony that should have been resolved by the ALJ under the standard set out in *Washington*.

apparent conflicts" between the VE and the DOT, and once a conflict is identified, the ALJ is required "to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict." *Id*. The Circuit Court also defined an apparent conflict as "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id*. at 1365. In other words, "a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence." *Id*. at 1356.

Here, the VE was asked to identify what jobs a hypothetical individual, similar to Plaintiff, could perform if that individual was limited to lifting twenty pounds occasionally and ten pounds frequently with his right hand but limited to lifting ten pounds occasionally and ten pounds frequently with his left hand. R. at 54–55. The VE responded that such an individual would be able to perform the requirements of representative occupations such as counter clerk (light, unskilled, SPV 2, DOT 249.366-010), with 18,000 jobs nationally; school bus monitor (light, unskilled, SPV 2, DOT 372.667-042) with 24,000 jobs nationally; and usher (light, unskilled, SPV 2, DOT 344.677-014) with 108,000 jobs nationally. *Id*. at 27. The DOT, however, defines "light work" in part as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects." *DOT*, App. C, 1991 WL 688702 (4th ed. 1991). The ALJ did not identify the discrepancy between Plaintiff's limitation of lifting ten pounds occasionally with his left hand and the twenty-pound limitation provided for by the DOT's definition of light work, and no evidence from the VE was presented to resolve it.

Whether the DOT's failure to specify if both hands or arms are necessary to meet the lifting requirement of light work presents an apparent conflict when a claimant's RFC includes a limb limitation does not appear to have been addressed by any court in this Circuit. *See e.g., Hill v. Colvin*, 807 F.3d 862, 871 (7th Cir. 2015) (Posner, R., concurring) ("The question of how to incorporate a limb restriction into a description of work capability in the Dictionary of Occupational Titles has been a recurring issue[,] and remains unresolved."). During oral argument on this issue, the undersigned invited the parties to submit any authorities on this issue, whether or not from the Eleventh Circuit, in an effort to assist the Court in reaching a conclusion. Plaintiff provided the Court with various cases from other Circuits as persuasive authorities for the proposition that the failure to address whether both extremities must meet the functional requirements of a job in a case where there was a limitation as to one limb was an actual conflict that had to be resolved on the record. ECF No. [28].[10] As for authorities in this Circuit, Plaintiff primarily relies on the decision in *Washington*.

_____

[10] Each of the citations provided support Plaintiff's position that the conflict presented here required the ALJ to make further inquiry and resolve the conflict on the record. ECF No. [28]; *see Pearson v. Colvin*, 810 F.3d 204, 210–11 (4th Cir. 2015) (noting that the ALJ should have resolved and addressed with the VE the apparent conflict between the DOT definition of reaching and the occupations listed by the VE which may require overhead reaching and the finding that Claimant's nondominant arm could only occasionally reach upward); *Lamear v. Berryhill*, 865 F.3d 1201, 1203, 1205–06 (9th Cir. 2017) (rejecting the Commissioner's argument that failure to reconcile the conflict between the testimony and the DOT was harmless because it can be presumed that the handling, fingering and reaching requirements are unilateral since the DOT does not expressly state that they demanded both hands); *Williams v. Berryhill*, No. 16-CV-01105-KAW, 2017 WL 4156195, at *4–6 (N.D. Cal. Sept. 18, 2017) (finding the ALJ erred in failing to inquire whether the DOT description required unilateral or bilateral arm use given that the claimant could not do repetitive, forceful gripping with his left hand); *Cunningham v. Astrue*, No. CV 09-624-TUC-HCE, 2011 WL 1119646, at *6–8 (D. Ariz. Mar. 28, 2011) (finding the discrepancy between a lifting limitation of five pounds occasionally and twenty pounds frequently and the exertional classification of light work was an actual conflict, and failure to address the discrepancy mandated remand); *Walker v. Colvin*, No. CIV-15-1353-R, 2016 WL 7744447, at *2–3 (W.D. Okla. Dec. 27, 2016), report and recommendation adopted, No. CIV-15-1353-R, 2017 WL 149999 (W.D. Okla. Jan. 13, 2017) (remand was required to address differing bilateral upper extremity capacity

The Commissioner's strongest position relies on the Eleventh Circuit's decision in *Christmas v. Comm'r or Soc. Sec.*, 791 Fed. Appx. 854, 857 (11th Cir. 2019).  ECF No. [25].  In *Christmas*, the VE acknowledged that the claimant could not frequently communicate with others and could not work in a fast-paced assembly line job and found that she was able to work as a fruit distributor.  791 Fed. Appx. at 857.  The claimant argued that the VE's testimony conflicted with the DOT because the job of fruit distributor required her to communicate with others and the fruit distributor job suggested it was fast-paced.  *Id.*  The Eleventh Circuit rejected both arguments.  Specifically, the Court found that the DOT description of the fruit distributor job did not discuss any communication requirements, nor did it discuss the pace or the quantity of fruit that the distributor should handle.  *Id.*  Because the DOT description was silent as to those points, there was no apparent conflict.  *Id.*  The Circuit Court noted that its decision in *Washington* did "not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferenced. " *Id.*

Defendant also provided *Cornell v. Comm'r of Soc. Sec.*, No. 19-cv-80105-BLOOM/Reinhart (S.D. Fla. May 19, 2020), *report and recommendation adopted*, No. 19-cv-

---

in a case where the ALJ limited the claimant to occasionally reaching with the left shoulder); *Cynthia B. v. Saul*, No. 4:18-CV-00016, 2019 WL 4364831, at *3–5 (W.D. Va. Aug. 20, 2019), *report and recommendation adopted*, No. 4:18-CV-00016, 2019 WL 4345374 (W.D. Va. Sept. 12, 2019) (finding error in ALJ's failure to address or resolve the conflict posed by the claimants RFC which limited her to occasional overhead reaching with one arm and the DOT listings for the three jobs identified by the VE which required frequent reaching).  The Commissioner identified two cases where district courts came to the opposite conclusion, holding that no conflict existed between an exertional level and a limited extremity.  ECF No. [21] at 5.  In V*ereen v. Comm'r of Soc. Sec. Admin.*, No. 0:14-cv-00921-TLW, 2015 WL 5098409 at *5–6 (D.S.C. Aug. 28, 2015), the court made that finding relying, in part, on case law that was since rejected by the Fourth Circuit, which like the Eleventh Circuit required the ALJ to affirmatively resolve apparent conflicts. *Lara v. Astrue*, No. EDCV 10-01570 AJW, 2011 WL 4631758, at *5 (C.D. Cal. Oct. 4, 2011), does not stand for the same proposition; as the plaintiff there could occasionally lift up to twenty pounds with his left hand and the job requires only the ability to occasionally to lift objects weighing up to ten pounds.

80105-BLOOM/Reinhart, 2020 U.S. Dis. LEXIS 97801 (S.D. Fla. June 3, 2020), in support of that argument.  In *Cornell*, the claimant had an RFC which, among other limitations, precluded her from working in tandem or in coordination with others.  *Id.* at 7–8.  The VE testified that she could work as an industrial cleaner and store laborer but the claimant argued that that job listing required her to work with others.  *Id.* at 7.  The Court held that no such requirement existed in the job description identified by the VE; therefore, the claimant's argument was requiring the court to draw inferences to find a conflict, and as such, no apparent conflict was present.  *Id.* at 8–9.  *See also Ledkins v. Berryhill*, No. CV 18-00011-B, 2019 WL 1294006, at *9 (S.D. Ala. Mar. 21, 2019) (finding DOT's silence on a job requirement or limitation does not suggest the existing of a conflict between the DOT and the VE's testimony; rather, it indicates the absence of a conflict.); *Bennett v, Comm'r Soc. Sec.*, 2019 U.S. Dist. LEXIS 16080 at *19–22, 2019 WL 410271 at *8–9 (M.D. Fla. 2019) (finding that there was no apparent conflict because although the claimant's RFC had a limitation of no overheard reaching, the DOT, as to the jobs at issue, was silent on the issue of overhead reaching).

Given the holding in *Washington* and the guidance provided by the Circuit Court in *Christmas*, the issue for the Court is whether the conflict presented is an apparent one which results from a reasonable comparison of the DOT with the VE's testimony, or whether an inference is required in order to find a conflict between the DOT and the VE's testimony.[11]  Having carefully

---

[11] The Commissioner also submitted a Second Notice of Supplemental Authority, citing to *Lockmon v. Astrue*, No. 07-3231-cv-S-REL-SSA, 2009 WL 331547, at *16 (W.D. Mo. Feb. 11, 2009) for the proposition that there was no conflict between the VE's testimony that the claimant could perform light work with very limited use of his right hand and the DOT because light work could also include negligible lifting and significant standing or walking. ECF No. [27].  However, that Court also specifically found that the jobs required occasional use of the right hand which the claimant could also do.  *Lockman*, No. 2009 WL 331547, at *16.

weighed all the authorities provided by the parties and after conducting its own review of *Washington's* progeny in this Circuit, the undersigned concludes that the conflict at issue was an apparent conflict that the ALJ failed to identify and resolve.  In *Christmas*, the court had to read certain requirements into the job description at issue to determine that a conflict was present.  Here, of course, no such inference is required.  The DOT definition for the jobs that the VE identified states that the Claimant must be able to lift twenty pounds, and yet he cannot do that with his left hand.  There is no need to infer anything to find that conflict.  Although that conflict can be addressed and resolved by the VE with testimony that either his left hand is not necessary for lifting or that the job requires much less lifting, it was not addressed and the fact that it can be resolved by the VE does not make the conflict less of an apparent conflict as defined by *Washington*.[12]  Indeed, as *Washington* clearly directed, a "conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  906 F.3d at 1365.

Here, the ALJ never asked about the discrepancy, nor did the VE provide any such testimony.  This is precisely the kind of inquiry that is required by *Washington*.  The VE knew that the limitation was in play when she provided the three jobs Claimant could still perform and yet provided no explanation as to how Claimant could meet the job's light exertional requirement.  Although the three jobs that the VE identified do not appear to require much lifting, a point made

---

[12] The Commissioner also argues that reduced functioning in one upper extremity is not inconsistent with the ability to perform light work and cites to a number of cases from other Circuits in support of that position.  ECF No. [21] at 4–5.  This argument, however, misses the mark.  The issue is not whether someone with a limb restriction can still do light work, the issue is whether this record has sufficient evidence in it for the ALJ to make that determination as to this Claimant.  In light of *Washington*, a finding that the Claimant can do light work cannot be supported by substantial evidence if the ALJ failed to identify and resolve the apparent conflict in this record.

by the Commissioner, that is not a determination that this Court can or should make at this stage. Rather, it is a determination that must be made by the ALJ with support from the testimony of the VE. The ALJ's failure requires the matter to be remanded so that the ALJ can develop the record and address the apparent conflict consistent with the Circuit Court's direction in *Washington*.

### D.   The ALJ Was Not Required To Consider Chavez-Fuentes' Eligibility For A Closed Period Of Disability.

Plaintiff contends that the ALJ committed reversible error when he failed to consider whether Chavez-Fuentes was eligible for a closed period of disability. ECF No. [13] at 11. Plaintiff argues that the ALJ's findings were based on medical records that were taken two years following the Plaintiff's January 2013 accident. *Id*. at 12. As such, Plaintiff contends that the ALJ was required to consider awarding Plaintiff a closed period of disability. *Id*. The Commissioner argues that Plaintiff's claim that the ALJ should have found him disabled for a closed period lacks merit. ECF No. [14] at 11. The Commissioners states that the ALJ correctly noted that the relevant time period for Plaintiff's disability was from January 23, 2013 and lasted until the ALJ's decision on May 12, 2017. *Id*. at 13. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled at any time during Plaintiff's relevant time period, and, as such, the ALJ was not required to consider Chavez-Fuentes' eligibility for a closed period of disability. *Id*.

"A closed period of disability may be considered when a claimant had an impairment that: 1) prevented substantial gainful activity for at least twelve (12) months, 2) continued to or through the month of filing, and 3) ceased in or after the month of filing but prior to the date of adjudication." *Harvey v. Astrue*, No. 3:08-cv-455-J-25MCR, 2009 U.S. Dist. LEXIS 74831, at *23 (M.D. Fla. Aug. 24, 2009). Nevertheless, when an ALJ determines that a claimant is not disabled at any time during the period of his alleged onset date to the date of his hearing and the

ALJ's decision is supported by substantial evidence, then the ALJ does not err in failing to consider a claimant's eligibility for a closed period of disability. *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772-73 (11th Cir. 2006).

The ALJ noted that the relevant time period for Plaintiff's disability began in January 23, 2013 and lasted through the ALJ's decision on May 12, 2017. R. at 17, 24. During that time period, the ALJ found that Plaintiff was not disabled at any time. *Id*. at 24. The ALJ did not need to consider whether Plaintiff qualified for a closed period of disability because the ALJ did not find that Plaintiff was disabled at any time throughout his alleged disability onset date, and, as previously noted, his decision was supported by substantial evidence in the record. *See Jones*, 181 F. App'x at 772–73 (holding that an ALJ does not need to consider whether a claimant is eligible for closed period of disability if the ALJ already properly determined that the claimant was not disabled at any time during the period of his alleged onset date to the date of his hearing). Accordingly, the undersigned finds that the ALJ did not err in not considering Plaintiff's eligibility for a closed period of disability.

## IV.     RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. [13], be **GRANTED IN PART AND DENIED IN PART**, that Defendant's Motion for Summary Judgment, ECF No. [14], be **DENIED**, and that this matter be **REMANDED**.

## V.     OBJECTIONS

Given that the parties have already filed their Objections, and that as to the issue of the impact of *Washington*, the parties had the opportunity to file supplemental authorities and to present oral argument, the undersigned hereby limits the time otherwise provided in Magistrate

Rule 4(b) and Federal Rule of Civil Procedure 73, such that the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge, and only as to the new finding in section III.C.  Any request for an extension of this deadline must be made within three (3) calendar days from the date of this Report and Recommendation.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report and Recommendation to which the parties failed to object.  28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of August, 2020.

_____
JACQUELINE BECERRA
United States Magistrate Judge